UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In Re:

GLIEE V. GUNSALUS and
BRIAN L. GUNSALUS. SR.,

                Debtors,
-------------------------------------------------------------x
GLIEE V. GUNSALUS and
BRIAN L. GUNSALUS SR.,
1338 White Road                                 **BK#: 17-20445-PRW**
Phelps, New York 14532

                                                  **AP#: 17-02008-PRW**

SSN: xxx-xx-0834
SSN: xxx-xx-8715
                Plaintiffs,

    -against-

COUNTY OF ONTARIO, NEW YORK, and
"JOHN DOE" and "JANE DOE", said names
being fictitious, it being the intention of Plaintiffs
to name any third-party purchaser of Plaintiffs'
home at 1338 White Road, Phelps, NY 14532
during the property tax foreclosure auction
scheduled by Ontario County at 2914 County
Road 48, Canandaigua, NY 14424 at
7 p.m., May 17, 2017
                Defendants
-------------------------------------------------------------x

**DEBTOR-PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Submitted by:                     Legal Assistance of Western New York, Inc.
                                        Mark H. Wattenberg, Esq., of counsel
                                        Amaris Elliott-Engel, Esq., of counsel
                                        Attorneys for Plaintiffs GLIEE V. GUNSALUS and
                                        BRIAN L. GUNSALUS, SR.
                                        16 W. William Street
                                        Bath, New York 14810-1622
                                        Telephone: (607) 776-4126

## TABLE OF CONTENTS

INTRODUCTION ...…………………………………………………………………...1

FACTS ……………………………………………………………………………………1

        A.  The Ontario County Tax Foreclosure Process ……………………………………1

        B.  Facts Concerning the Gunsaluses ...………………………………………………2

STANDARD FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY
INJUNCTION…………………………………………………………………………..5

        A.  The Second Circuit Standard for TROs and Preliminary Injunctions…………….5

        B.  The Authority of the Bankruptcy Court to Grant Injunction Relief………………6

        C.  The Court's Authority to Hear TRO/Preliminary Injunction on Expedited Basis...7

DEBTORS-PLAINTIFFS' ENTITLEMENT TO A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION …....……………………………...……….8

        A. Debtor-Plaintiffs Are Entitled to a TRO and a Preliminary Injunction on an Expedited Basis……………………………………...…………………………………8

        B. The Gunsalus Family Will Suffer Irreparable Harm if the TRO/Injunction Is Not Granted………...……………………………………………………………………….8

        C. The Gunsalus Family Has a High Likelihood of Success on the Merits of Their Case…………………………………………………………………………………..10

CONCLUSION…………………………………………………………………………..16

# INTRODUCTION

This Memorandum of Law is submitted in support of the motion of debtor-plaintiffs GLIEE V. GUNSALUS and BRIAN L. GUNSALUS, SR. for a temporary restraining order (hereinafter "TRO") and preliminary injunction. On April 28, 2017, they filed a Chapter 13 proceeding which proposes to pay off Ontario County property tax arrears of $1,236.52 over a 5-year period. On May 3, 2017, they filed an adversary proceeding to avoid the tax foreclosure of their home, on the grounds that it was a fraudulent transfer or a constructive fraudulent transfer pursuant to 11 USC § 548(a)(1)(B) and 11 USC 522(h). On May 17, 2017, Ontario County is planning to auction their home. On May 11, 2017, Ontario County denied a request to remove the home from the auction pending a determination of the adversary proceeding. Through this motion, debtor-plaintiffs, Mr. and Mrs. Gunsalus, seek the intervention of the Court to enjoin Ontario County from selling their home until their claim in the adversary proceeding can be heard.

# FACTS

**A.    The Ontario County Tax Foreclosure Process**

Ontario County has adopted Article 11 of the New York Real Property Tax Law when conducting *in rem* tax foreclosures. Though permissible under Article 11, Ontario County has not adopted any procedures for permitting a homeowner to redeem the property after the deadline, regardless of circumstances. Gunsalus Affidavit ¶ 24. Likewise, though permissible, Ontario County has not adopted any procedures for permitting a homeowner to enter into an installment agreement on delinquent taxes. Gunsalus Affidavit ¶ 8. Moreover, pursuant to Article 11, a homeowner in Ontario County who loses their property to tax foreclosure is not entitled to any surplus funds. Exhibit B. The benefit of any surplus is retained by Ontario County. (Exhibit "B", Elliott-Engel Affidavit)

1

### B. Facts Concerning the Gunsaluses

Mr. and Mrs. Gunsalus reside at their home at 1338 White Road, Village of Phelps, Ontario County, New York, which they own by virtue of a deed, dated July 16, 2002. Gunsalus Affidavit ¶ 1. They fell behind on their 2014 and 2015 County and Town property taxes. During this period, Mrs. Gunsalus had a temporary reduction in hours and then was laid off and experienced a corresponding reduction in income. Since then, her employment and income have stabilized and they can afford on an ongoing basis to make the necessary payments to remain in their home. Gunsalus Affidavit ¶ 6.

On October 2, 2015, Ontario County commenced an *in rem* tax foreclosure proceeding under Article 11 of the New York Real Property Tax Law to foreclose on Mr. and Mrs. Gunsaluses' home for the unpaid 2014/2015 property taxes totaling $1,236.52. The Petition of Foreclosure listed January 15, 2016 as the deadline to redeem. Gunsalus Affidavit ¶ 9.

The Gunsalus' sought a brief extension in the deadline to redeem, which was opposed by Ontario County. On June 1, 2016, the County Court denied the application for an extension of time to redeem and granted a judgment of tax foreclosure to Ontario County. Gunsalus Affidavit ¶ 17. The judgment authorized Ontario County to record a deed conveying to Ontario County full and complete title to Mr. and Mrs. Gunsaluses' home and barred them from any right, title, interest, claim, lien or equity of redemption in their home. Elliott-Engel Affidavit ¶ 10. Upon information and belief, Ontario County has not recorded a deed pursuant to the judgment. Elliott-Engel Affidavit ¶ 11.

On April 28, 2017, Mr. and Mrs. Gunsalus filed a Chapter 13 petition, which is within two years of when the interest in their home was transferred to Ontario County through a judgment of foreclosure in the *in rem* proceeding on June 1, 2016. Gunsalus Affidavit ¶ 18. The

plan provides for full repayment of the property tax arrears as well as the full payment of a debt owed for their personal vehicle and a 20 percent repayment of debts owed to unsecured creditors. Elliott-Engel Affidavit ¶ 4. In bringing this action, Mr. and Mrs. Gunsalus seek to preserve their housing and bring an asset back into the estate for the benefit of their creditors. *Id*.

On May 3, 2017, an adversary proceeding was filed by Mr. and Mrs. Gunsalus against Defendant Ontario County to avoid the tax foreclosure of their home as a fraudulent conveyance or a constructive fraudulent conveyance, pursuant to 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 522(h). Elliott-Engel Affidavit ¶ 2. The Gunsaluses claim their home as exempt in the bankruptcy. Gunsalus Affidavit ¶ 19. The Gunsalus home is economical as they own it free and clear of a mortgage. Gunsalus Affidavit ¶ 20. Preserving the home is essential to their Chapter 13 Plan, in which they propose a payment of 20 percent to their unsecured creditors over a 5-year period. Gunsalus Affidavit ¶ 20.

Ontario County foreclosed on the home for unpaid property taxes of $1,236.52. Gunsalus Affidavit ¶ 22. At the time of the deadline to redeem, Ontario County assessed property taxes on the home based on an assessed value of $45,000, which amount was provisionally used by Debtors in their Chapter 13 plan on April 28, 2017. Gunsalus Affidavit ¶ 21; Elliott-Engel Affidavit ¶ 8. As of 2017, the tax assessment is being raised to $50,000. Elliott-Engel Affidavit ¶ 8. On May 1, 2017, Mr. and Mrs. Gunsalus obtained an appraisal of their home at $28,000. Elliott-Engel Affidavit ¶ 12. The ratio between the appraised value and the tax lien that resulted in the property tax foreclosure is 22 to 1. Elliott-Engel Affidavit ¶ 3.

The Chapter 13 Trustee has not attempted to set aside the transfer of debtors' home to Ontario County, pursuant to 11 U.S.C. § 548(a)(1)(B). Elliott-Engel Affidavit ¶ 14. On May 1, 2017, Legal Assistance of Western New York (LawNY) Staff Attorney Amaris Elliott-Engel

3

inquired of the Chapter 13 Trustee, George Reiber, whether his office would seek to avoid the transfer. *Id*. On May 1, 2017, his office declined to do so. *Id*. Mr. and Mrs. Gunsalus assert the power to step into the shoes of the Trustee to avoid the transfer under 11 U.S.C. § 522(h). *Id*.

At the time that the home was transferred to Ontario County on June 1, 2016, the value of Mr. and Mrs. Gunsaluses' debts outweighed the value of their non-exempt assets. Gunsalus Affidavit ¶ 23. Their Chapter 13 plan and schedules reflect their financial status as of the date of the transfer because their assets and liabilities have not materially changed from June 1, 2016, to their filing on April 28, 2017 of the Chapter 13 petition. Gunsalus Affidavit ¶ 23.

Mr. and Mrs. Gunsalus have continued to receive Town, County and School property tax bills. Gunsalus Affidavit ¶ 25. Since the deadline to redeem of January 15, 2016, they have paid all the ongoing taxes assessed against their home. *Id*. at ¶ 26.

Ontario County has included their home in the list of parcels to be sold at a tax foreclosure auction scheduled for 7:00 p.m. Wednesday, May 17, 2017 at the Ontario County Training Facility, 2914 County Road 48, Canandaigua, NY 14424. Gunsalus Affidavit ¶ 30. Ontario County has placed a lawn sign in front of their home stating that the home is to be sold at the auction. Gunsalus Affidavit ¶ 31. Numerous individuals have come to the Gunsalus threshold as a result of the sign and the property being listed in the tax foreclosure auction. Gunsalus Affidavit ¶ 32. They have come at all hours of the day and night. *Id*. They have been walking onto their property. *Id*. On one occasion, a prospective buyer at the auction entered the home without asking permission. *Id*.

On May 9, 2017, LawNY requested the Ontario County Attorney remove Mr. and Mrs. Gunsaluses' home from the May 17, 2017 tax foreclosure auction, in view of the pendency of the adversary proceeding to restore title to their home. Elliott-Engel Affidavit ¶ 15. On May 11,

4

2017, via letter dated May 10, 2017, Jason S. DiPonzio, outside counsel for Ontario County, informed LawNY that Ontario County had declined to remove Mr. and Mrs. Gunsaluses' home from the property tax auction scheduled for May 17, 2017. Elliott-Engel Affidavit ¶ 17.

If the Gunsalus home is sold at the auction, they have no other housing to which to move and they face becoming homeless. Gunsalus Affidavit ¶ 33.

## STANDARD FOR TRO AND PRELIMINARY INJUNCTION

A.  **The Second Circuit Standard for TROs and Preliminary Injunctions**

Applicants faced with the possibility that irreparable injury will occur before the hearing for a preliminary injunction required by Federal Rule of Civil Procedure 65(a) can be held may seek a TRO under Rule 65(b). Fed. R. Civ. P. Rule 65(a)-(b); Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 94 S. Ct. 1113 (1974). Such an order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party. *Id*.

In all cases before the Court in the U.S. Court of Appeals for the Second Circuit, the party seeking an injunction must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir.2002); Cacchillo v. Insmed, Inc., 638 F.3d 401, 406 (2d Cir.2011) (quoting Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 n. 4 (2d Cir.2010)).

5

**B.     The Authority of the Bankruptcy Court to Grant Injunctive Relief**

The applicants in this case have requested that the Court issue a TRO and a preliminary injunction to prevent the sale of their home via *in rem* foreclosure pending resolution of the bankruptcy proceedings. The purpose of the Bankruptcy Act (11 U.S.C.A.), passed pursuant to the power of Congress to establish a uniform system of bankruptcy throughout the United States, is to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among creditors. Straton v. New, 283 U.S. 318, 321 (1931). Per 11 U.S.C.A. § 105(a), the Bankruptcy court has inherent authority, pursuant to Federal Rules of Civil Procedure and in exercise of power granted to it to enter "necessary or appropriate" injunctive orders, to enter a TRO and preliminary injunction pending trial on merits. In re Johns-Manville Corp., 801 F.2d 60, (2d Cir. 1986); In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir. 1985). All of Rule 65 of the Federal Rules of Civil Procedure, regarding injunctions, applies in bankruptcy adversary proceedings except that the applicant need not give security for the operation of the injunction. See Fed. R. of Bankruptcy P. Rule 7065.

The Second Circuit has stated that Section 105(a) injunctions are proper in two circumstances: (i)"to enjoin creditors' lawsuits against third parties where 'the injunction plays an important part in the debtor's reorganization plan,'" or (ii) "where the action to be enjoined 'will have an immediate adverse economic consequence for the debtor's estate.'" In re Bernard L. Madoff Inv. Securities, LLC, 512 Fed. Appx. 18, 20 (2d Cir. 2013). Because a bankruptcy court has equitable authority under § 105(a) "to assure the orderly conduct of the reorganization proceedings," the bankruptcy court has jurisdiction to enjoin a foreclosure sale of property, provided that the bankruptcy court determines that the foreclosure sale would have detrimental effect on debtor's ability to reorganize. In re Baldwin–United Corp. Litig., 765 F.2d 343, 348 (2d

6

Cir.1985); In re Stadium Management Corp., D.Mass.1988, 95 B.R. 264. See also MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 93 (2d Cir. 1988) (noting that a bankruptcy court's injunctive powers under § 105(a) allow it to enjoin any suits that "might impede the reorganization process"), cert. denied, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

The bankruptcy court's use of its inherent equitable power to issue an injunction prohibiting foreclosure is justified upon a finding that property against which creditor sought to foreclose was the only asset owned by debtor, and that foreclosure would cause irreversible harm to debtor and other creditors, while denial of right to foreclose would only inconvenience creditor, and that threatened foreclosure would interfere with bankruptcy court's jurisdiction over administration of debtor's case. In re Canandaigua Land Development, LLC, 521 B.R. 457 (W.D.N.Y. 2014); In re Medical Plaza Associates, Ltd., 67 B.R. 879 (W.D.Mo.1986).

**C. The Court's Authority to Hear TRO/Preliminary Injunction on Expedited Basis**

Pursuant to Fed. R. of Bankruptcy P. Rule 9006(c), "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Pursuant to the U.S. Bankruptcy Court for the Western District of New York Local Rules of Bankruptcy Procedure 9006, a party wishing to shorten the notice requirements of Federal Rule of Bankruptcy Procedure 9013 "must make written application to the appropriate Judge for an expedited hearing." "A written motion, other than one which may be heard ex parte, and notice of any hearing shall be served not later than seven days before the time specified for such hearing, *unless a different period is fixed by these rules or by order of the court.* Such an order may for cause shown be made on ex parte application." (Emphasis added). Fed. R. of Bankruptcy P. Rule 9006(d).

7

**DEBTOR-PLAINTIFFS' ENTITLEMENT TO A TRO AND PRELIMINARY INJUNCTION**

**A.    Debtor-Plaintiffs Are Entitled to a TRO and a Preliminary Injunction on an Expedited Basis**

Mr. and Mrs. Gunsalus make this application to the Bankruptcy Court to be heard on their request for a TRO and a Preliminary Injunction on an expedited basis and for an expedited hearing to be scheduled, as appropriate, because the tax foreclosure auction is scheduled to be held at 7 p.m. on May 17, 2017. Upon Mr. and Mrs. Gunsaluses' within motion, the Court has the discretion to order an expedited review of their request for a TRO and preliminary injunction. Fed. R. of Bankruptcy P. Rule 9006(c). Mr. and Mrs. Gunsalus urge the Court to hear and grant their request for a TRO prior to the May 17, 2017 auction, and as soon as possible thereafter schedule a hearing on their request for a preliminary injunction. For the reasons elaborated upon below, debtor-plaintiffs can show cause for an expedited review. Without a TRO, Mr. and Mrs. Gunsalus will suffer irreparable harm, and an asset that their Chapter 13 plan proposes to use for the benefit of all creditors will be taken at the behest of one.

**B.    The Gunsalus Family Will Suffer Irreparable Harm if the TRO/Injunction Is Not Granted**

As set forth in their affidavits, Mr. and Mrs. Gunsalus face irreparable harm if Ontario County proceeds to auction their home at the May 17, 2017 tax foreclosure auction. Mr. and Mrs. Gunsalus, and their adult disabled child, will be homeless. Gunsalus Affidavit ¶ 33. In addition, preserving their home is central to the success of their Chapter 13 Plan. Gunsalus Affidavit ¶ 20. The home is economical, as it does not have a mortgage. Gunsalus Affidavit ¶ 20. It is also modified to accommodate Mr. Gunsalus' limited mobility. Gunsalus Affidavit ¶ 5.

It is well recognized that loss of a home constitutes irreparable harm. "It is axiomatic that wrongful eviction constitutes irreparable injury." <u>Brown v. Artery Org., Inc.</u>, 654 F. Supp. 1106,

8

Case 2-17-02008-PRW,    Doc 7-10,    Filed 05/15/17,    Entered 05/15/17 15:23:10,
Description: Supplement Memorandum of Law, Page 10 of 18

1118 (D.D.C. 1987). As a leading case states, "Possibly wrongful eviction from one's home is a serious injury. It is well recognized that real property is unique and not fungible. A person's home has even more intangible value. The whole family is uprooted and displaced." Johnson v. U.S. Dep't of Agric., 734 F.2d 774, 788 (11th Cir. 1984). Foreclosure proceedings under Article 11 of the New York Real Property Tax Law (NYRPTL) are essentially forfeiture proceedings, as the homeowner does not realize any surplus from the auction. The county receives the benefit of any surplus. It is recognized that in housing cases, a stay tolling a cure period is compelling, "because of the unique nature of real estate, the absence of a stay would result in a forfeiture." Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 890 (2d Cir. 1990).

In addition, a forfeiture would work an irreparable harm upon the Mr. and Mrs. Gunsaluses' other creditors. Mr. and Mrs. Gunsalus' Chapter 13 plan hinges upon the avoidance of the transfer. If the property is auctioned and the Gunsalus' are forced to move, their housing costs will rise significantly. The low monthly costs of their home make it an essential asset which works to the benefit of their unsecured creditors as part of the Gunsalus' Chapter 13 plan. Enjoining the sale of the property until a determination of the adversary proceeding will protect the home for the benefit of the Gunsaluses' other creditors besides Ontario County--all the while without unfairly prejudicing Ontario County. See In re Myerson & Kuhn, 121 B.R. 145, 155 (Bankr. S.D.N.Y. 1990) (finding that not granting a stay on lawsuits by some creditors would result "in an inefficient and inequitable administration of the estate's assets, and a diminished return to creditors, directly contrary to the intent of the Bankruptcy Code"); In re McConnell, 60 B.R. 310, 312 (Bankr. W.D. Va. 1986) (allowing an adversary proceeding in a Chapter 13 case to continue because dismissing it on the motion of one creditor would prejudice the other creditors); Dore & Associates Contracting, Inc. v. American Druggists' Ins. Co., 554 B.R. 353,

9

357-58 (Bankr. W.D. Wisconsin 1985) ("Irreparable harm in the bankruptcy context refers to either irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate.").

The prejudice is minimal to Ontario County from a TRO which restrains the sale of the home of Mr. and Mrs. Gunsalus at the auction. Ontario County has accepted payment by Mr. and Mrs. Gunsalus of the 2016 school taxes and the 2017 Town and County taxes. In addition, the appraised value of the home is $28,000, compared to property tax arrears of $1,236.52. The Chapter 13 Plan provides for payment in full of the property tax arrears. Even if debtors fail to complete their Chapter 13 Plan, it is likely that Ontario County will be able to satisfy any remaining amount owed on the tax lien from a future sale.

**C.     The Gunsalus Family Has a High Likelihood of Success on the Merits of Their Case**

Mr. and Mrs. Gunsalus are likely to succeed on the merits of their case because they meet the elements of a proceeding to avoid a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I) and 11 U.S.C. § 522(h). This Court has summarized these elements as follows:

> To establish the elements of a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), the trustee must prove that: (1) the debtor had an interest in Property; (2) a transfer of that interest occurred within two years of the filing of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received less than reasonably equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I).

Canandaigua, 521 B.R. at 466.

In order to succeed at trial, Mr. and Mrs. Gunsalus have the burden of showing that they meet all of these elements. Presumably, there is no dispute that Mr. and Mrs. Gunsalus owned their home at the time of the judgment of tax foreclosure. Likewise, debtor-plaintiffs assume there is no dispute that the Chapter 13 filing on April 28, 2017 occurred within two years of this

10

final judgment pursuant to NYRPTL § 1136. This judgment was signed on June 1, 2016 and filed on June 9, 2016 in the Ontario County Clerk's Office.

In addition, the Gunsaluses must show that they were insolvent or were rendered insolvent on June 9, 2016, by the judgment of tax foreclosure. Their detailed schedules attached to the Chapter 13 petition, filed on April 28, 2017, show their liabilities exceed their non-exempt assets. Gunsalus Affidavit ¶ 23. They assert that there was no material change in their assets and liabilities between June 1, 2016 when the judgment of foreclosure was granted and entered, and April 28, 2017, when their Chapter 13 was filed. Gunsalus Affidavit ¶ 23.

The primary issue in dispute is whether they received "less than reasonably equivalent value" from the transfer of their home to Ontario County in the property tax foreclosure proceeding under Article 11 of the NYRPTL.

As explained by this Court in Canandaigua, 521 B.R. 457, in New York's tax foreclosure scheme, the foreclosing taxing authority is not entitled to a conclusive presumption that it provided to the debtor "reasonably equivalent value" under 11 U.S.C. § 548(a)(1)(B)(i).

The United States Supreme Court's ruling in BFP v. Resolution Trust Corp., 511 U.S. 531 (1994) concerned mortgage foreclosures. In BFP, the court held that the price gained at a properly conducted mortgage foreclosure sale is deemed to be "reasonably equivalent value." *Id.* at 545. However, footnote 3 of the decision specifically states that the analysis for tax foreclosures may be different.

As this Court has noted, many courts have given meaning to footnote 3, declining to extend that presumption of reasonably equivalent value to tax foreclosures. "[T]he majority of courts faced with the issue have declined to extend the Supreme Court's BFP 'presumption of reasonably equivalent value' to a properly conducted *in rem* tax foreclosure where the procedural

11

safeguards provided by the state's mortgage foreclosure statutes were absent from the state's *in rem* tax foreclosure statutes." Canandaigua, 521 B.R. at 473. While a foreclosure sale may be expected to yield reasonably equivalent value, lower courts in the State of New York have interpreted BFP not to apply to tax foreclosures because tax foreclosures under New York law are straight forfeitures rather than foreclosure sales. See e.g. In re Murphy, 331 B.R. 107, 119-20 (Bankr. S.D.N.Y. 2005); In re Herkimer Forest Products Corp., No. 04-13978, 2005 WL 6237559, at *4 (Bankr. N.D.N.Y. 2005).

As stated by this Court, "[T]he *in rem* tax foreclosure does not provide an 'allowance for public sale and competitive bidding, which are safeguards present in the context of the mortgage foreclosure process in *BFP*.'" Canandaigua, 521 B.R. at 473 (quoting Herkimer, 2005 WL 6237559, at *3). As recognized in Herkimer, 2005 WL 6237559, at *4, the County is required to hold a sale of property, but when the sale occurs "the County is the fee owner of the property and any value the County receives at auction would be to its benefit not the debtor's." Even if the property sold at auction for a greater amount than the tax debt, Mr. and Mrs. Gunsalus would not receive the balance. BFP declined to hold that a mortgage foreclosure sale could be a fraudulent transfer because states have developed foreclosure sales "as a means of avoiding the draconian consequences of strict foreclosure." 511 U.S. at 541. By contrast, New York's tax foreclosure scheme, which does not return to the debtor the proceeds of the sale and allows a property to be forfeited due to a tax debt less than five percent of the property's market value, is like the type of strict foreclosure which BFP noted no longer occurs in the mortgage context. The tax foreclosure scheme in Ontario County lacks procedural safeguards to prevent "draconian consequences", even by tax foreclosure standards. Ontario County has not adopted any system to allow homeowners to apply for installment payments or post-judgment redemption for delinquent

12

Case 2-17-02008-PRW, Doc 7-10, Filed 05/15/17, Entered 05/15/17 15:23:10, Description: Supplement Memorandum of Law, Page 14 of 18

homeowners, though such systems are authorized by RPTL Article 11, § 1184. Moreover, when the Gunsalus' sought a short extension of the deadline due to an unexpected death in order to close on a loan to pay Ontario County in full, Ontario County vigorously opposed the request. Gunsalus Affidavit ¶ 13. As such, unlike in BFP, there is no conclusive presumption that reasonable equivalent value was provided to Debtor by the County.

Courts have compared the market value to the amount of taxes owed to determine whether reasonably equivalent value was provided. In cases where the property has not yet been sold, courts have engaged in a "proportional analysis," determining "reasonably equivalent value" by comparing the tax debt to the scheduled value of the property. Canandaigua, 521 B.R. at 473-74. In Canandaigua a transfer was voided where a property worth at least $300,000 was forfeited on account of a $16,594.99 tax liability. Similarly, in Herkimer, the properties in question had an undisputed value of at least $269,800 where the tax debt was only $24,000. Herkimer, 2005 WL 6237559. The Herkimer court noted, "The value of the Properties is approximately 11 times the debt. Clearly, the value of the Properties is not proportional to the Debtor's tax debt, and the transfer is voidable as fraudulent under Code § 548." *Id.* at *4. Finally, the court in In re Wentworth, 221 B.R. 316, 320 (Bankr. D. Conn. 1998) voided the transfer, made before a sale took place, of a home worth $20,700 that had a tax lien of only $1,515.63.

The tax debt at issue for the home of Mr. and Mrs. Gunsalus was $1,236.52, on a home assessed by Ontario County at $45,000, and assessed by a real estate appraiser retained by Mr. and Mrs. Gunsalus at $28,000. Elliott-Engel Affidavit ¶ 12. Even the lower appraisal amount reflects a value that is 22 times the property tax arrears. Id. Mr. and Mrs. Gunsalus have not received reasonably equivalent value, and the ratio of property value to the tax debt is 22 to 1, a greater ratio than in the cases Canandaigua, Herkimer and Wentworth where the transfer was

13

Case 2-17-02008-PRW, Doc 7-10, Filed 05/15/17, Entered 05/15/17 15:23:10, Description: Supplement Memorandum of Law, Page 15 of 18

voided. All the foregoing case law indicates that the Gunsalus transfer was not proportional and is voidable under 11 U.S.C. § 548(a)(1)(B).

Mr. and Mrs. Gunsalus are entitled to bring their adversary proceeding seeking avoidance of the transfer as the Chapter 13 Trustee has declined to make the motion. 11 U.S.C. 522(h); Elliott-Engel Affidavit ¶ 14. On May 9 and May 10, 2017 our office requested Ontario County to remove Mr. and Mrs. Gunsaluses' home from the May 17, 2017 auction in view of the pendency of the adversary proceeding. *Id*. at ¶¶ 14-15 In a letter dated May 10, 2017 and sent via email on May 11, 2017, filed electronically on behalf of Ontario County by its outside counsel, Jason S. DiPonzio, Esq., Ontario County refused this request. *Id*. at ¶ 16. The Ontario County letter cites to decisions which hold that for bankruptcy purposes, a final judgment of tax foreclosure extinguishes the homeowner's interest in the home and protection by the automatic stay. Wisotzke v. Ontario Cty., 409 B.R. 20 (W.D.N.Y. 2009), aff'd, 382 F. App'x 99 (2d Cir. 2010); In re Martyak, 432 B.R. 25, 28 (Bankr. N.D.N.Y. 2010). However, a homeowner may still seek to avoid the transfer as a constructive fraudulent conveyance, pursuant to 11 USC § 548(a)(1)(B). This requires claiming the homestead as exempt under the federal exemptions, 11 USC § 522(d)(1). In re Johnson, 449 B.R. 7, 14 (Bankr. W.D.N.Y. 2011) (written before the federal exemptions were available to debtors in New York).Mr. and Mrs. Gunsalus' Chapter 13 petition and schedules have claimed their home as exempt under 11 U.S.C. § 522(d)(1). They have filed an adversary proceeding to avoid the transfer. As a result, the issue in this case is the entitlement of Mr. and Mrs. Gunsalus to a TRO and preliminary injunction to restrain Ontario County from selling their home while the adversary proceeding is pending. Such relief may be granted by the Court pursuant to 11 U.S.C. §105(a), and Rule 7065.

14

Case 2-17-02008-PRW, Doc 7-10, Filed 05/15/17, Entered 05/15/17 15:23:10, Description: Supplement Memorandum of Law, Page 16 of 18

This Court also has the authority to issue a stay of proceedings independent of the automatic stay provision of 11. U.S.C. 362. Such an injunction may be issued to stay actions not covered by the automatic stay in order to prevent significant harm to the estate. In re Guy C. Long, Inc., 74 B.R. 939, 944 (Bankr. E.D. Pa. 1987). The authority to issue a stay stems from 11 U.S.C. 105, which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." A "Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings." In re Baldwin-United Corp. Litig., 765 F.2d 343, 348 (2d Cir. 1985). Other bankruptcy courts have issued TROs to stop the sales of property. See In re Yukos Oil Co., 320 B.R. 130, 137 (Bankr. S.D. Tex. 2004) (enjoining the sale of a company's assets after finding a likelihood of success on the merits and the sale of the assets would constitute irreparable harm); In re Ilevbare, No. 11-00216, 2011 WL 2357871, at *2 (Bankr. N.D. Ala. May 19, 2011) (enjoining the sale of an automobile). In In re Houghton, 123 B.R. 869, 875 (Bankr. C.D. Cal. 1991), the court temporarily halted the eviction of debtors because the foreclosure sale was not conducted under the procedures set forth in California law. As set forth for all the reasons previously discussed in this brief and because Mr. and Mrs. Gunsalus would suffer irreparable harm by the sale of their home and they have a likelihood of success on the merits, the Bankruptcy Court would be justified in using its equitable powers to assure the orderly conduct of this case and prevent harm to the creditors. Granting a TRO and preliminary injunction barring Ontario County from auctioning Mr. and Mrs. Gunsaluses' home before a determination has been made on the merits of their adversary proceeding also would ensure the orderly conduct of this case and benefit all secured and unsecured creditors.

15

Case 2-17-02008-PRW, Doc 7-10, Filed 05/15/17, Entered 05/15/17 15:23:10, Description: Supplement Memorandum of Law, Page 17 of 18

## CONCLUSION

The Court should grant debtor-plaintiffs GLIEE V. GUNSALUS and BRIAN L. GUNSALUS, SR. application for expedited review, issue a TRO, schedule a hearing for a motion for a preliminary injunction and grant such other and further relief as may be deemed just and proper.

DATED:     May 15, 2017           /s/ Mark H. Wattenberg
               Bath, New York          _____
                                                Legal Assistance of Western New York, Inc.
                                                Mark H. Wattenberg, Esq., of counsel
                                                Amaris Elliott-Engel, Esq. of counsel
                                                Attorneys for Plaintiffs GLIEE V. GUNSALUS and
                                                BRIAN L. GUNSALUS, SR.
                                                16 W. William Street
                                                Bath, New York 14810-1622
                                                Telephone: (607) 776-4126

16

Case 2-17-02008-PRW, Doc 7-10, Filed 05/15/17, Entered 05/15/17 15:23:10, Description: Supplement Memorandum of Law, Page 18 of 18