UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    Gliee V. Gunsalus,                                Bankruptcy Case No. 17-20445-PRW
    Brian L. Gunsalus, Sr.,                            Chapter 13

                Debtors,

_____

    Gliee V. Gunsalus,
    Brian L. Gunsalus, Sr.,

               Plaintiffs,

        vs.                                        Adversary Proceeding No. 17-2008-PRW

    Ontario County, New York,
    John Doe,
    Jane Doe,

               Defendants.

_____

**DECISION AND ORDER
AVOIDING TRANSFER OF REAL PROPERTY
UNDER 11 U.S.C. § 522(h) AND § 548(a)(1)(B),
RESTORING TO DEBTORS TITLE TO REAL PROPERTY
UNDER 11 U.S.C. § 550(a) AND
OVERRULING OBJECTION TO HOMESTEAD EXEMPTION**

PAUL R. WARREN, U.S.B.J.

    Gliee Gunsalus and Brian Gunsalus filed a Chapter 13 petition on April 28, 2017. A few days later, the Gunsaluses commenced this adversary proceeding, under 11 U.S.C. § 522(h) and § 548(a)(1)(B), seeking to avoid the involuntary transfer of title to their home to Ontario County, a transfer that occurred in connection with a real property tax foreclosure action. The Gunsaluses request, as a remedy, that title to their home be restored to them, under 11 U.S.C. § 550(a), either by cancellation of the Treasurer's Deed held by Ontario Country or by way of a deed from Ontario

County reconveying title to them. For the reasons that follow, the relief sought by Mr. and Mrs. Gunsalus in their Complaint is **GRANTED**.

I.

**JURISDICTION**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (H) and (O). The Court has jurisdiction under 28 U.S.C. § 1334. The parties expressly consented to the entry of a final judgment by this Court. (ECF AP No. 59 ¶ 8).[1] The Court held a trial with respect to the disputed facts on December 10, 2019. Under Rule 52(a)(1) FRCP, made applicable to this proceeding by Rule 7052 FRBP, this decision sets out the Court's specific findings of fact, based on the evidence introduced at trial and the uncontested facts as stipulated by the parties, together with the Court's conclusions of law. The Court will enter a final judgment in a separate document as required by Rule 58(a) FRCP, made applicable to this adversary proceeding by Rule 7058 FRBP.

---

[1] References to the docket for the adversary proceeding (Case No. 17-2008) are identified as "ECF AP" and references to the docket in the main bankruptcy case (Case No. 17-20445) are identified as "ECF BK."

2

## II.

## PROCEDURAL HISTORY[2]

A brief review of the procedural history of this adversary proceeding may be useful, as this litigation has covered much ground in the lead-up to trial. This action was commenced on May 3, 2017. (ECF AP No. 1). The Gunsaluses immediately requested the issuance of a preliminary injunction, to preserve the *status quo* during the pendency of the action. (ECF AP Nos. 6, 7). A preliminary injunction was granted. (ECF AP No. 15). As a consequence, the County has refrained from transferring title to the Gunsaluses' home to a third-party, pending resolution of this action. The County filed a timely Answer to the Complaint. (ECF AP No. 18). The County also filed an objection to the federal homestead exemption claimed by the Gunsaluses, (ECF AP No. 22), which objection has been opposed by the Gunsaluses. (ECF AP No. 23).

The Court promptly issued an Order scheduling a Rule 16 conference and requiring the parties to file a discovery plan. (ECF AP No. 19). The parties filed their joint discovery plan, by which the parties affirmatively consented to the entry of a final judgment by this Court. (ECF AP No. 20). In late July 2017, the County filed a motion to dismiss the adversary proceeding, asserting that the County was entitled to the legal presumption of having provided reasonably equivalent value in connection with the tax foreclosure. (ECF AP Nos. 25, 28). The Gunsaluses opposed the County's motion. (ECF AP Nos. 27, 29). The motion was taken under submission on September

---

[2] This adversary proceeding is substantially similar to *Hampton v. Ontario Cnty. of NY*, Case No. 17-02009-PRW. The parties in both cases are represented by the same attorneys, the pleadings are nearly mirror images, and the trials were held *seriatim*. However, because the specific facts in each action must be detailed, as required by Rule 52(a)(1) FRCP, to support the Court's decision (with differing citations to the record), two separate decisions are being issued. It is hoped that this approach will ease, not increase, the work of an appellate court in reviewing the decision in each adversary proceeding.

3

15, 2017 and, on November 6, 2017, this Court issued a Decision and Order granting the County's motion to dismiss, holding that the County was entitled to a presumption of having given reasonably equivalent value in the taking of title to the Gunsaluses' home by the tax foreclosure. (ECF AP No. 30).

The Gunsaluses took a timely appeal of this Court's decision to the District Court. (ECF AP No. 43). In deference to the District Court, this Court held confirmation of the Gunsaluses' Chapter 13 plan in abeyance, under Rule 8007(e)(1) FRBP, pending resolution of the appeal. (ECF BK No. 47). On July 19, 2018, the District Court issued a Decision and Order, reversing this Court's decision—holding that the County was not entitled to a presumption of having provided reasonably equivalent value in exchange for the transfer of the Gunsaluses' home—and remanding the action for further proceedings consistent with its decision. (ECF AP No. 52). This Court immediately issued an Order scheduling a Rule 16 conference and lifting the suspension of proceedings in the Chapter 13 case. (ECF AP No. 53). The County then took a timely appeal of the District Court's decision to the Second Circuit. (ECF AP No. 55). Again, in deference to the Circuit Court, this Court issued an Order suspending proceedings in the Chapter 13 case, under Rule 8007(e)(1) FRBP. (ECF AP No. 56).

On January 17, 2019, upon being advised that the Second Circuit had dismissed the County's appeal as premature, this Court immediately issued an Order scheduling a Rule 16 conference, requiring the parties to file a new discovery plan, and lifting the suspension of proceedings in the Chapter 13 case. (ECF AP Nos. 57, 58).[3] The parties filed a revised discovery plan, suggesting a trial date of February 29, 2020, and again affirmatively consenting to the entry of

---

[3] The Mandate of the Court of Appeals for the Second Circuit was entered on the docket in this case on March 14, 2019. (ECF AP No. 61).

4

a final judgment by this Court. (ECF AP No. 59). The Court issued a Scheduling Order establishing—among other deadlines—a date for conclusion of discovery and scheduling a trial for June 26, 2019 (considerably sooner than had been suggested by the parties). (ECF AP No. 60). The parties persuaded the Court to move the trial to a date in early December 2019, resulting in the issuance of an Amended Scheduling Order. (ECF AP 64). The parties repeatedly requested minor changes to various deadlines set by the Court, all of which the Court granted to enable the parties to fully prepare for trial. (ECF AP Nos. 65-69, 71, 72, 74).

Less than a week before trial, the County requested an open-ended adjournment of the trial date. (ECF AP No. 88). The Court denied that request, by Order directing that the trial would commence on December 10, 2019. (ECF AP No. 91). The parties then stipulated to the admissibility of appraisal reports and the qualifications of each party's appraiser. (ECF AP No. 92). The parties also stipulated to certain uncontested facts. (ECF AP No. 94). Consequently, the only factual issues to be resolved at trial were: (1) whether the Gunsaluses received reasonably equivalent value in exchange for the involuntary transfer of their home; and (2) whether the Gunsaluses were insolvent at the time of the transfer of title to their home to the County.

Immediately following the conclusion of trial, the Court entered an Order requiring the parties to file post-trial briefs, with proposed findings of fact and conclusions of law. (ECF AP No. 100). In keeping with that Order, post-trial briefs were filed by the parties on January 17, 2020 (ECF AP Nos. 103, 104), at which point the matter was taken under submission. This decision and resulting judgment fully adjudicate this action.

## III.

## ISSUES

The two narrow factual issues before the Court are: (1) whether the County provided reasonably equivalent value to the Gunsaluses, in exchange for the involuntary transfer of title to their home in satisfaction of a tax lien totaling $1,290.29; and (2) whether the Gunsaluses were insolvent at the time of the transfer or were rendered insolvent as a result of the transfer.

Based on the evidence introduced at trial and the uncontested facts in the record, the Court finds that—(1) the County did not provide reasonably equivalent value for the Gunsaluses' home; and (2) the Gunsaluses were insolvent at the time of the transfer.

## IV.

## FINDINGS OF FACT[4]

**A. <u>Fair Market Value of the Subject Property</u>**

Mr. and Mrs. Gunsalus have owned a modest home located at 1338 White Road, Town of Phelps, New York, since April 1, 2006 ("Property"), where they live together with their disabled adult son. (ECF AP No. 94 ¶ 1; Trial Transcript ("Tr.") at 6:25-7:1-9). Mrs. Gunsalus has lived that home for her entire life. (Tr. at 5:10-15). Due to a temporary reduction in Mrs. Gunsalus' income, the Gunsaluses were unable to pay the 2014 real estate taxes on the Property. (Tr. at 88:23-89:1-14). The parties have stipulated that the unpaid taxes totaled $1,290.29. (ECF AP No. 94 ¶ 5).

---

[4] The findings of fact are based on the Complaint and Answer, testimony and exhibits introduced at trial, in addition to facts not in dispute as a result of stipulations between the parties. (ECF AP No. 94). Mrs. Gunsalus and Mr. Gunsalus both testified at trial. Having had the opportunity to observe this testimony, the Court found the Gunsaluses to be forthcoming and completely credible.

As a result, the County commenced a tax foreclosure action under Article 11 of New York Real Property Tax Law ("RPTL"), by serving a notice as required by RPTL § 1125(1)(a). (ECF AP No. 1 ¶ 27). The notice informed the Gunsaluses that the deadline to redeem their home from the tax foreclosure, by fully paying the delinquent taxes, was January 15, 2016. (*Id.*). When the Gunsaluses did not redeem the Property, the County moved for and was granted summary judgment by the Ontario County Supreme Court. (*Id.* ¶¶ 35, 36). A final judgment of foreclosure was entered by the state court on June 9, 2016. (ECF AP No. 94 ¶ 2). By operation of RPTL § 1136, the judgment of foreclosure awarded the County immediate possession of and title to the Gunsaluses' home, in exchange for which the $1,290.29 tax lien was satisfied. There was no mortgage or other encumbrance on the Property. (ECF BK No. 1, Sch. D).

The value of the Gunsaluses' home was considerably greater than the amount of the County's tax lien. In advance of trial, the parties stipulated to both the qualifications of each of their respective appraisers and the admissibility of the appraisers' reports. (ECF AP No. 93).[5] According to the appraisers, as expert witnesses, the Gunsaluses' home had a fair market value of between $28,000 and $30,000 on June 9, 2016, the date the County was awarded title to the home. (Plaintiffs' Trial Ex. 5; Defendant's Trial Ex. A). Almost a year later, on May 17, 2017, the County

---

[5] Interestingly, in its post-trial brief, the County argues that *neither* appraisal report is reliable—asserting that the comparable sales considered by both appraisers were flawed. (ECF AP No. 103, Part 2, Proposed Conclusions of Law ¶¶ 10-18). As the County would have it, the Court should dismiss the action for want of any proof as to the fair market value of the Property. (*Id.*). The Court, as the finder of fact, is not persuaded that the appraisal reports should be ascribed no probative value. Additionally, the amount bid by a third-party at the post-foreclosure auction does provide evidence of the Property's fair market value (albeit at the low end of the valuation spectrum).

conducted a post-foreclosure auction sale of the Property, under RPTL § 1136.[6] (ECF AP No. 15). It must be emphasized that, at the time of the post-foreclosure auction sale, the Gunsaluses had already been stripped of title to the Property and the County was selling its fee interest in the Property. Under RPTL § 1136, the County was entitled to keep any proceeds resulting from the auction sale, after satisfaction of the tax lien. A price of $22,000 was bid by a third-party (and accepted by the County) for the Property, to satisfy a tax lien of $1,290.29. (ECF AP No. 27 at 5). Under state law, the County is entitled to keep 100% of the surplus—amounting to more than $20,000. The County reaped a sizeable windfall, while the Gunsaluses lost 100% of the equity in the Property, all in keeping with state law.

The Court finds that the amount of $22,000, bid by a third-party at auction, and the County's appraised value of $30,000 provide the low-water and high-water marks for the fair market value of the Property. The appraisal reports in evidence provide a fair market value ranging from $28,000 to $30,000. The amount bid at the post-foreclosure auction ($22,000) is fairly close to the appraised valuation range, further demonstrating to the Court that the appraisals are reliable here. The Court finds that the Fisher appraisal (Plaintiffs' Trial Ex. 5), introduced in evidence by the Gunsaluses, is the most persuasive valuation and entitled to greater weight than the Taras appraisal (Defendant's Trial Ex. A). Therefore, the Court finds as fact that the fair market value of the Property, at the time of the entry of the foreclosure judgment in favor of the County, was $28,000. In exchange for transfer of title to the Property worth $28,000, the Gunsaluses received only forgiveness of a $1,290.29 tax lien.

---

[6] By stipulation, the County was required to notify bidders that title to the Property was in dispute—which would certainly chill bidding. (ECF AP No. 15 ¶ 5). Further, the County agreed that it would not transfer title to a third party until this adversary proceeding was resolved. (*Id.* ¶ 1).

## B. Financial Condition of the Gunsaluses on the Date of Transfer

Without actually saying so, the County appears to concede that the Gunsaluses were insolvent on June 9, 2016, the day that their title to the Property was involuntarily transferred to the County. In its post-trial submission, the County merely summarizes—but doesn't quarrel with—the evidence introduced at trial as showing the Gunsaluses had assets valued at $8,693.39 and liabilities totaling $16,643.02 on the date of the transfer. (ECF AP No. 103-1 ¶¶ 9, 10).[7] The Court finds that there is no genuine dispute over the fact that the Gunsaluses were insolvent on the date that the Property was transferred.

Additionally, and alternatively, the Courts finds that the evidence introduced by the Gunsaluses at trial overwhelmingly demonstrates that they were insolvent on the date of the transfer. (*See* ECF AP No. 104 at 15-17 (detailing the Gunsaluses' balance sheet as of June 9, 2016 with citations to the record)). Using the statutory formula for computing the value of assets, under 11 U.S.C. § 101(32)(A), the evidence introduced at trial proves that the value of the Gunsaluses' assets—for insolvency purposes—was $0.00. (*Id.* at 15-16 (summarizing assets with citations to trial exhibits and trial testimony)). The evidence introduced at trial also proves that the Gunsaluses' liabilities on the date of transfer totaled $20,768.84. (*Id.* at 17 (summarizing liabilities with citations to trial exhibits and trial testimony)).

Therefore, the Court finds that the Gunsaluses had a net worth of -$20,768.84 on June 9, 2016, the date that title to the Property was involuntarily transferred to the County. Simply put, the Gunsaluses were insolvent on the day that their Property was transferred.

---

[7] The County incorrectly includes, in its tally of assets, those assets that were fully exempt, contrary to the formula set out in 11 U.S.C. § 101(32)(A).

## V.

## CONCLUSIONS OF LAW

**A. <u>The Transfer Must Be Set Aside as Constructively Fraudulent</u>**

In remanding this case, the District Court has tasked this Court with determining whether the transfer of the Property should be set aside as a constructively fraudulent transfer under the Bankruptcy Code. *Hampton v. Ontario Cty.*, 588 B.R. 671 (W.D.N.Y. 2018). The statutory framework for making that determination is found in 11 U.S.C. § 522(h) and § 548(a)(1)(B). The Gunsaluses have based their claim for relief in the Complaint on that precise statutory framework.

The Bankruptcy Code empowers *a trustee* to set aside a constructively fraudulent conveyance, if the following elements are proved: (1) the debtor had an interest in the property; (2) a transfer of the property occurred within two years of the filing of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received less than reasonably equivalent value in exchange for the property transfer. 11 U.S.C. § 548(a)(1)(B). And under § 522(h) of the Code, *the debtor* may avoid the transfer of that property if: (1) the transfer was not voluntary; (2) the property was not concealed by the debtor; and (3) the trustee did not attempt to avoid the transfer. 11 U.S.C. § 522(h) and (g)(1). The party seeking to avoid a constructively fraudulent transfer has the burden of proving each element by a preponderance of the evidence. *Clinton Cty. Treasurer v. Wolinsky*, 511 B.R. 34, 38 (N.D.N.Y. 2014); *Schneider v. Barnard*, 508 B.R. 533, 547 (E.D.N.Y. 2014).

Here, there is no dispute that the Gunsaluses have satisfied each of the statutory elements under § 522(h) of the Code—the transfer was not voluntary, the Property was not concealed, and the trustee did not attempt to avoid the transfer. Further, the parties have stipulated that the Gunsaluses have satisfied the first and second elements necessary to prevail on an action under

10

§ 548(a)(1)(B) of the Code—they had an interest in the Property and the transfer took place within 2 years of the filing of the bankruptcy petition. (ECF AP No. 94 ¶¶ 3, 4). Only the insolvency and reasonably equivalent value elements are in dispute. And, there is no genuine dispute over the fact that the Gunsaluses were insolvent at the time of the transfer. The County's post-trial brief tacitly concedes as much. (ECF AP No. 103 ¶¶ 9, 10). Further, the evidence introduced at trial overwhelmingly proves that the Gunsaluses were insolvent, using the formula established by § 101(32)(A) of the Code.

The only element genuinely in dispute at trial was the last element under 11 U.S.C. § 548(a)(1)(B)—whether the Gunsaluses received reasonably equivalent value in exchange for the transfer of title to their home. "The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received." *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997) (citing *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1125-26 (5th Cir. 1993)). "[T]he formula for determining reasonably equivalent value is not a fixed mathematical formula; rather, the standard for 'reasonable equivalence should depend on all the facts of each case,' an important element of which is fair market value." *Id.* at 387 (quoting *In re Bundles*, 856 F.2d 815 (7th Cir. 1988)); *see also In re Smith*, 811 F.3d 228, 235 (7th Cir. 2016). The Court must determine whether the Gunsaluses' economic position immediately after the tax foreclosure was equivalent to their economic position before the tax foreclosure. *In re Clay*, Case No. 14-27268-GMH, 2015 Bankr. LEXIS 2039, at *7 (Bankr. E.D. Wis. June 19, 2015).

The Court has determined, based on the appraisal reports received in evidence by stipulation and the sale price bid by a third-party at auction, that the Gunsaluses' home had a fair market value of $28,000 at the time of the transfer. In exchange, the Gunsaluses received value in the form of

11

Case 2-17-02008-PRW, Doc 107, Filed 02/19/20, Entered 02/19/20 12:14:07, Description: Main Document , Page 11 of 20

relief from the County's $1,290.29 tax lien. There were no other liens or encumbrances on the Property. Under RPTL Article 11, the County was awarded absolute title to the Property and the Gunsaluses' equity of redemption was forfeited. *See* RPTL § 1136. Simply put, the County expunged its $1,290.29 tax lien in exchange for which it was awarded title to property worth $28,0000—a purchase price equal to 4.6% of fair market value. Alternatively, if the price received by the County at the post-seizure auction ($22,000) is viewed to be a better indicator of fair market value, the Gunsaluses fare no better. Expunging a $1,290.29 tax lien, in exchange for title to property worth $22,000, represents a purchase price equal to 5.9% of fair market value. The Court holds that a purchase price amounting to between 4.6% and 5.9% of fair market value is not reasonably equivalent to the value of the Property. *See In re Smith*, 811 F.3d at 238 ("A purchase price between 3.8% and 8.8% of fair market value is not reasonably equivalent to the value of the property.").

In arguing that the Gunsaluses have failed to prove that reasonably equivalent value was not provided, the County makes two arguments. First, the County argues that the Gunsaluses cannot obtain any relief under § 548 of the Code because all of the surplus equity, after payment of the tax lien, is fully exempt under the federal homestead exemption. (ECF AP No. 103-1 at 6). As a result, as the County sees it, the Gunsaluses' action based on a constructively fraudulent conveyance must be dismissed because it provides no benefit to creditors, it only benefits the Gunsaluses. (*Id.*). Second, the County argues that reasonably equivalent value *was* provided, because the amount of the tax lien satisfied by the transfer is not "disproportionately small" when compared to the value of the Property. (*Id.* at 10-11). Neither argument survives scrutiny.

12

In support of its first argument—that only the Gunsaluses benefit, not the creditors, by avoidance of the tax foreclosure—the County relies heavily on *In re Murphy*, 331 B.R. 107 (Bankr. S.D.N.Y. 2005).[8] As the *Murphy* court described the situation before it:

> This case is extremely unusual. If the transfer is completely avoidable under Section 548 and recoverable under Section 550, all creditors and administrative expenses will be paid in full *upon the completed liquidation of debtor's estate, and there will be a substantial surplus remaining*, based on the alleged value of the Property. . . . In simple terms, the issue is who has the right to the surplus funds as between debtor and [the foreclosing governmental unit].

*Id.* at 121 (emphasis added). The *Murphy* court held that the constructively fraudulent conveyance of the debtor's property could be set aside only to the extent necessary to pay prepetition and administrative creditors claims, thereby allowing the foreclosing governmental unit to keep the debtor's surplus equity of approximately $300,000. *Id.* at 125-26. But, *Murphy* does not stand for the sweeping proposition suggested by the County. *Murphy* is distinguishable in several critical respects.

First, while *Murphy* was initially filed as a Chapter 13 reorganization case, it was converted to a Chapter 7 *liquidation* in just over two weeks. (*See* U.S. Bankruptcy Court S.D.N.Y. Case No. 04-20092-rdd, ECF Nos. 1, 6, 8, 12). Second, while the debtor listed the subject property as an asset, she was allowed to claim only a $10,000 homestead exemption with respect to the subject property under CPLR § 5206(a).[9] (*Id.* ECF No. 3, Sch. A, C). Further, under CPLR § 5206(a), the

---

[8] The string citation of other cases in the County's brief—in an effort to bolster the *Murphy* recovery-cap—are all corporate Chapter 11 cases that have no relevance here. (*See* ECF No. 103 at 5-6).

[9] *Murphy* was decided long before the effective date of statutory amendments that allowed debtors in New York State to claim the federal exemptions, instead of the New York exemptions. *See* N.Y. Debt. & Cred. Law § 285 (effective Jan. 21, 2011). A very different circumstance than presented in this case.

13

New York homestead exemption—unlike the federal homestead exemption—is subordinated to and effectively eliminated by a tax lien for purposes of § 522(g)(1) of the Code. *See In re Johnson*, 449 B.R. 7 (Bankr. W.D.N.Y. 2011). Third, the Chapter 7 trustee in *Murphy* did commence an action to avoid the transfer of the subject property. These seemingly innocuous facts are significant in understanding why *Murphy* found that the debtor "was not *legally* harmed by the forfeiture of the Property." *In re Murphy*, 331 B.R. at 126. The debtor in *Murphy* was legally entitled to nothing under § 522(g)(1) and (h) of the Code, by operation of CPLR § 5206(a).

Here, (very much unlike *Murphy*), the Gunsaluses *have claimed the federal exemption* in the Property. (ECF No. 1, Sch. A/B, C). And, it so happens, the federal homestead exemption available to the Gunsaluses is sufficient in amount as to render 100% of the "surplus" remaining, after satisfaction of the tax lien, fully exempt. The Gunsaluses have a legal right to claim the federal homestead exemption under 11 U.S.C. § 522(b)(2). Unlike the debtor in *Murphy*, under § 522(g)(1) and (h) of the Code, the Gunsaluses will be *legally harmed* by the loss of the fully-exempt surplus equity.

It is this critical distinction that impales the County's effort to convince this Court to extend the *Murphy* "recovery-cap" to this case. In *Murphy*, the debtor had no rights under either § 522(g) or (h) of the Code, because the Chapter 7 trustee *did* bring an action under § 548 of the Code. Further, by operation of the New York homestead exemption statute, the debtor's property in *Murphy* was not exempt for purposes of § 522(g)(1) of the Code. N.Y. CPLR Law § 5206(a) ("But no exempt homestead shall be exempt from taxation or from sale for non-payment of taxes or assessments."); *see also In re DSI Renal Holdings, LLC*, AP No. 14-50356, 2020 Bankr. LEXIS 283, at *22 (Bankr. D. Del. Feb. 4, 2020) ("For the debtors to obtain equity, they must have

14

avoidance powers themselves [under § 522(h)] or the ability to benefit from those of the trustee [under § 522(g)].") (citing *In re Messina*, 687 F.3d 74 (3d Cir. 2002)).

Here, (very much unlike *Murphy*), the Gunsaluses *do* have the right to seek to avoid the transfer of their Property under §§ 522(g) and (h) because: (1) they claimed the *federal* homestead exemption; (2) the transfer of the Property was not voluntary; (3) the Property was not concealed; (4) the transfer is avoidable by the trustee under § 548; and (5) the trustee did not attempt to avoid the transfer. 11 U.S.C. §§ 522(f)-(g). The County's reliance on *Murphy*, as applied to the facts of this case, would require that the Court read §§ 522(g) and (h) completely out of the Code—stripping the Gunsaluses of their statutory right to avoid the transfer under those Code provisions. It is axiomatic that a statute must not be interpreted in a way that renders a provision a nullity. *See Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 341 (D. Conn. 2001) (citations omitted).

As the County would have it, if property that is the subject of a § 548 avoidance action is not *liquidated* solely for a dollar-for-dollar benefit to the creditors, then resort to the Code's fraudulent transfer provisions is improper. The County's myopic view—which this Court flatly rejects—ignores the larger purpose served by the bankruptcy system. "[T]he broader purposes of the Bankruptcy Code and its fraudulent transfer provisions [is] to ensure *both* a fair distribution of the debtor's assets among creditors *and a fresh start for the debtor*." *In re Smith*, 811 F.3d at 238 (emphasis added). "*Fraudulent transfer remedies can also help provide a fresh start to debtors*, at least in circumstances like this where the fraud is constructive." *Id.* at 239 (emphasis added). By retaining their fully-exempt surplus equity (and the affordable and modest housing it represents), while repaying the County and their unsecured creditors over 5 years through a Chapter 13 plan, the Gunsaluses will receive a fresh start, the County will receive full payment for both pre-petition and post-petition taxes, and unsecured creditors will receive a fair distribution.

15

In support of its second argument—that the amount of the tax lien satisfied by the transfer is not "disproportionately small" when compared to the value of the Property—the County has cherry-picked a few cases in a transparent attempt to tip the table its way. (ECF AP No. 103-1 at 9-10). The County argues that, if the difference between the value of the property transferred and the amount of the debt satisfied in exchange for that transfer *is modest* (here $26,709.71), then the consideration given cannot (ever) be found to be disproportionately small for purposes of the reasonably equivalent value analysis. (*Id.*). In support of that argument, the County cites three cases where the difference between the value of property and the debt satisfied in exchange for transfer of that property *was* found to be disproportionately small—the range of difference in those cases was $91,000, $425,000 and $970,000, respectively. (*Id.*).

Perhaps the County's stated resoluteness in making this argument is belied by the fact that it devotes less than a full page to the argument in its post-trial brief. Rather than simply rejecting the County's argument out of hand as nonsense, the Court would observe that other courts have set aside constructively fraudulent conveyances where the difference between the value of the property transferred and the tax lien satisfied was quite modest. *See In re Clay*, Case No. 14-27268-GMH, 2015 Bankr. LEXIS 2039 (Bankr. E.D. Wis. June 19, 2015) (setting aside the transfer of property worth $40,700 to satisfy a tax debt of $11,259.21); *Clinton Cty. Treasurer v. Wolinsky*, 511 B.R. 34 (N.D.N.Y. 2014) (setting aside the transfer of property worth $25,500 to satisfy a tax lien of $4,250.25); *County of Clinton v. Warehouse at Van Buren St., Inc.*, 496 B.R. 278 (N.D.N.Y. 2013) (setting aside the transfer of property worth $120,000 to satisfy a tax lien of approximately $29,000); *In re Wentworth*, 221 B.R. 316 (Bankr. D. Conn. 1998) (setting aside the transfer of property worth $20,700 to satisfy a tax lien of $1,515.63). Here, the Court holds that consideration

given by the County ($1,290.29) was disproportionately small as compared to the fair market value of the Property ($28,000).

The Court holds that the Gunsaluses have carried their burden of proof on all elements necessary to prevail on a cause of action under 11 U.S.C. § 522(h) and § 548(a)(1)(B). Consequently, the involuntary transfer of title to Ontario County under RPTL § 1136, is avoidable as a constructively fraudulent conveyance, under § 522(h) and § 548(a)(1)(B) of the Code.

### B. <u>Recovery of Property Transferred is Appropriate Remedy</u>

Once a transfer has been avoided, § 550 of the Code provides that the trustee (or debtor acting under § 522(h)) may recover for the benefit of the estate, the property transferred, or, if the court orders, the value of the property. 11 U.S.C. § 550(a). For purposes of § 550(a), the County is the "initial transferee" because, under RPTL § 1136, the County was awarded absolute title to the Property upon entry of the judgment of foreclosure. *See Wisotzke v. Ontario Cnty.*, 409 B.R. 20 (W.D.N.Y. 2009). Although the County did conduct a post-foreclosure auction about a year after the County took title, this Court enjoined the County from transferring title to the Property to the successful third-party bidder. "[T]he initial transferee has no defense against liability under § 550." *In re Smith*, 811 F.3d at 244. "Faithful to the language of the statute, the courts have given a very broad construction to the phrase 'benefit of the estate.' Benefit for purposes of § 550 includes both direct benefits to the estate (*e.g.*, an increased distribution*) and indirect ones (e.g., an increase in the probability of a successful reorganization).*" *In re Tronox Inc.*, 464 B.R. 606, 613-14 (Bankr. S.D.N.Y. 2012) (emphasis added).

Here, the Court finds that return of title to and possession of the Property to the Gunsaluses will provide an indirect but important benefit to the estate—it will greatly increase the probability of

17

a successful reorganization under the Chapter 13 plan. The reconveyance of title and possession will result in the Gunsaluses keeping modest and affordable housing, which appears to require only minimal operational costs, thereby greatly increasing their financial ability to make all plan payments, while keeping current their ongoing property taxes. By comparison, a money judgment against the County (for the surplus proceeds) would force the Gunsaluses to find other modest (and affordable) housing for themselves and their disabled son—a very speculative proposition at best. The Court finds that the appropriate remedy under § 550(a) is to restore to the Gunsaluses possession of and absolute title to the Property.

Under § 550(a)(1) of the Code, the County is directed to take all steps necessary to restore the Gunsaluses' ownership and possessory rights to the Property, as set forth in the Deed dated July 16, 2002, recorded in the Ontario County Clerk's Office at Index No. IN 2002 011601, Book/Page D 01079 0915. Any deed to the Property from the Ontario County Treasurer to the County of Ontario, issued by virtue of the June 9, 2016 judgment of foreclosure, is cancelled. As a result, the post-foreclosure auction and the incipient transfer of title to a third-party buyer is voided. The County is directed to refund to the third-party bidder any funds paid in connection with the auction. The tax lien that precipitated this litigation may remain in place, against the Property, until the pre-petition tax debt secured by that lien has been repaid through the Chapter 13 plan.

## C. The County's Objection to Homestead Exemption is Overruled

As a housekeeping matter, having cleared the path for the Gunsaluses' Chapter 13 plan to move toward confirmation, the County's objection to the claimed homestead objection must be considered. (ECF BK No. 24). The County argues that the plain language of § 522(c)(2)(B) makes

18

Case 2-17-02008-PRW, Doc 107, Filed 02/19/20, Entered 02/19/20 12:14:07, Description: Main Document , Page 18 of 20

the claimed federal homestead exemption wholly unavailable to the Gunsaluses. The County is wrong.

As the Gunsaluses correctly argue in opposition to the County's objection, the plain language of § 522(c)(2)(B) provides that property exempted remains liable for any debt secured by a tax lien, until the lien is satisfied. (ECF BK No. 29). Consequently, during the pendency of this Chapter 13 case, the County's tax lien on the Property remains in place while the tax debt is paid through the Chapter 13 plan. The Gunsaluses' homestead exemption is subject to that lien, by operation of § 522(c)(2)(B). But, the federal homestead exemption is available to and has been properly claimed by the Gunsaluses under § 522(b). The County's objection is **OVERRULED**. The Chapter 13 trustee and the Gunsaluses are directed to take such steps as are necessary to bring a Chapter 13 plan before the Court for a confirmation hearing.

## VI.

## CONCLUSION

The transfer of the Property is **AVOIDED** under 11 U.S.C. § 522(h) and § 548(a)(1)(B). Any deed from the Ontario County Treasurer to the County, issued pursuant to the judgment of foreclosure, is **CANCELLED**. The post-foreclosure auction and incipient transfer of title from the County to a third-party buyer is **VOIDED**. The County is directed to refund to the third-party bidder any funds paid in connection with the auction. The County is directed to promptly convey all right, title, and interest in and to the Property to the Gunsaluses under 11 U.S.C. § 550(a). The County is permitted to reinstate its $1,290.29 pre-petition tax lien against the Property (less credit for any payments made), until satisfied through the Chapter 13 plan. The County's objection to the Gunsaluses' federal homestead exemption is **OVERRULED**. The Chapter 13 trustee is to schedule

19

Case 2-17-02008-PRW, Doc 107, Filed 02/19/20, Entered 02/19/20 12:14:07, Description: Main Document , Page 19 of 20

a hearing for confirmation of a Chapter 13 plan; at least 28 days' notice of that hearing is to be served on all creditors by counsel to the Gunsaluses.

The Court will enter a separate judgment avoiding the tax foreclosure, as required by Rule 58(a) FRCP and Rule 7058 FRBP. The Clerk of Court is to serve notice of entry of judgment as required by Rule 9022 FRBP. The Clerk of Court is directed to immediately close this adversary proceeding after entry of judgment in accordance with this decision.

**IT IS SO ORDERED.**

DATED: February 19, 2020 _____/s/_____
       Rochester, New York        HON. PAUL R. WARREN
                                         United States Bankruptcy Judge